CHARLES S. COLTON

*v.*

CHAUNCEY M. DEPEW et al.

[Filed November 6th, 1899.]

D. gave his bond and mortgage to N. and then conveyed the estate mort-gaged. D. was subsequently discharged in bankruptcy and the liability on the bond became thereby extinguished. The alienee continued thereafter to pay interest on the mortgage, and the last payment was made nineteen years before the suit to foreclose was begun. The suit was begun more than twenty years after the principal had become payable.—*Held*, (1) that the payments were necessarily referable to the mortgage, and that being so referable they were an acknowledgment that the mortgagor or his grantee held under or by permission of the mortgagee; (2) that the possession only became adverse when such payments ceased; (3) that as the right to bring ejectment continued for twenty years from the time of the last payment, so the right to foreclose continued for the same period.

On final hearing.

*Mr. W. Randolph Parmly, Mr. Charles L. Carrick* and *Mr. Charles L. Corbin,* for the complainant.

*Mr. James B. Vredenburgh,* for the defendants.

STEVENS, V. C.

This is a suit brought to foreclose a mortgage. The statute of limitations is set up as a bar to recovery. The facts are these: On January 3d, 1863, Nathaniel Dole mortgaged land in Weehawken to William W. Niles to secure his bond of $17,000. The principal sum was payable with interest on January 3d, 1864. Niles, by deed of assignment dated on the same day, assigned to Jane Van Horn, whose surviving executor, on September 29th, 1882, assigned to complainant. The land mortgaged was conveyed by Dole, the mortgagor, to Delacroix, who, on December 31st, 1870, conveyed to the Weehawken Ferry Company. The deed from Dole to Delacroix contained no

Colton v. Depew.

assumption clause and no agreement that the mortgage money should be taken as part of the consideration. Hence the ferry company was under no personal liability to pay. *Crowell* v. *Hospital of St. Barnabas, 12 C. E. Gr. 655*; *Wise* v. *Fuller, 2 Stew. Eq. 257*.

The title remained in this company until July 9th, 1884, when it was conveyed by a master to one Simpson, who conveyed to one Symes, who conveyed to Chauncey M. Depew, the present owner. The last payment of interest was made by the Weehawken Ferry Company on December 22d, 1876. The bill was filed December 18th, 1896.

The case is distinguishable from *Blue* v. *Everett, 11 Dick. Ch. Rep. 455*, in the circumstance that, except for a part of the years 1863 and 1864, the obligor resided in the State of New York, where he died in 1891. The eighth section of the Limitations act provides that if any person against whom there is or shall be any such cause of action as, *inter alia*, is mentioned in the sixth section of the act (the section referring to obligations conditioned to pay money) shall not be resident in this state when such cause of action accrues or shall remove from this state after the same shall accrue and before the time of limitation is expired, then the time during which such person shall not reside in this state shall not be computed as part of the limited period within which such action is required to be brought.

*Blue* v. *Everett* lays down two propositions—*first*, that where the legal remedy on both debt and mortgage has been barred by the statute and where no independent equity appears, a suit to foreclose cannot be maintained; *second*, "that so long as the *debt* remains the right of the creditor to resort to the land for payment of the debt also continues, even though by the statute the legal right of entry is barred."

As the case at bar comes within the second of these two propositions, the complainant would undoubtedly be entitled to recover were it not for the existence of another fact. That fact is that, on January 7th, 1868, it was adjudged by the district court of the United States, for the southern district of New York, that Dole, the obligor,

Colton *v.* Depew.

"be forever discharged from all debts and claims, which, by the said act (the Bankruptcy act of 1867), are made provable against his estate, and which existed on the twenty-fifth day of June, 1867."

The effect of this decree was to discharge the debt on the bond, but not to impair the mortgage.

For several years after this discharge, interest was paid by the Weehawken Ferry Company, the grantee of the land, to the assignee of the mortgage, the last payment being made December 22d, 1876. In 1871, Dole, the obligor, who was the president of the ferry company, made the following endorsement on the bond :

"In consideration of the extension of time of pay't of this bond after its maturity, it is understood and agreed that the rate of interest from this date shall be seven per cent. per annum.

"New York, Jan'y 3, 1871.          NATHANIEL DOLE. [Seal.]"

There can be little question but that the person who paid the interest at this time was the Weehawken Ferry Company, and the agreement that was really intended was no doubt that this company would pay seven instead of six per cent. In *Whyte* v. *McGovern, 22 Vr. 360*, Mr. Justice Depue says : "A discharge in bankruptcy, unlike the bar of the statute of limitations, is a positive extinguishment of the debt, liability or demand to which it applies. Nothing less than an express promise to pay can renew or revive the bankrupt's liability, and by statute the promise must be put in writing and signed by the party to be charged therewith." Other cases to the same effect are *Briggs* v. *Sutton, Spenc. 582*, and *Stewart* v. *Reckless, 4 Zab. 427*. If we look at the stipulation in question as an independent contract, deriving no support from the prior but now extinguished obligation, it is impossible to say that it contains a promise by Dole to pay $17,000. Dole's personal obligation is therefore extinct. What, then, is the legal situation ? It is, plainly, that after the year 1868, the payments made by the ferry company are to be regarded as payments made with reference to the mortgage security and not with reference to the bond.

This brings me to the only doubtful question in the case,

namely, the effect to be given to payments, referable only to the mortgage, made within twenty years before the commencement of the suit.    This is not decided by *Blue* v. *Everett*.    The decision in that case was expressly put upon the ground that the payments of interest were referable to the personal obligation of the mortgagor.    Mr. Justice Dixon says: "At law the bar of the statute could not be obviated by payments made on account of the debt, for the mortgagor does not hold the land under the mortgagee, and the payments could not be deemed rent or in any sense the price of possession, *but would be referred solely to the personal obligation held by the obligee.*"    In the case in hand the payments are necessarily referable to the mortgage.    There is nothing else to refer them to.    But the mortgage is, in terms, a conveyance of the legal estate on condition.    It is this legal estate that constitutes the only security which the mortgagee possesses outside of the bond.    This is the estate in respect of which the mortgagee enters when he exercises his right of entry; the estate which, after the maturity of the obligation, he may recover in an action of ejectment; the estate which he may convert into an unconditional estate by strict foreclosure, or which, overriding all subsequent liens and encumbrances, he may have sold in foreclosure proceedings, under the provisions of the Chancery act.

It is said, in the opinion in *Blue* v. *Everett*, that until entry the mortgagor, according to the New Jersey doctrine, continues to be the legal owner of the land for all purposes.    This, in general, is true.    But as between the mortgagor and mortgagee, the statement is to be taken with certain qualifications.    When the mortgagee is, for example, exercising his right to enter or to bring ejectment, he can do so only by virtue of the legal estate vested in him by the mortgage conveyance.    That this is well-settled law is apparent from the cases cited in the opinion.    Thus, in *Montgomery* v. *Bruere, 1 South. 260,* where it was held that the widow was entitled to dower in an equity of redemption, Chief-Justice Kirkpatrick, speaking of the legal *status* of the mortgagor, said: "In short, he (the mortgagor) is to be considered as tenant of the freehold for all purposes and in all rela-

Colton *v.* Depew.

tions of life, *except such as concern the mortgagee.*" And in
*Wade* v. *Miller, 3 Vr. 296,* Chief-Justice Beasley, quoting a prior
adjudication of the court of errors, says : " The mortgagor and
others claiming under him are considered both in law and equity
as seized and absolute owners of the premises, against all others,
except the mortgagee and those claiming under him, and in
equity against them also, except for the amount due." And in
*Shields* v. *Lozear, 5 Vr. 501,* Mr. Justice Depue, speaking for
the court of errors, after remarking that with the modification
of the rights of the mortgagee introduced by the case of *San-
derson* v. *Den,* " the nature of the mortgage as a conveyance
remains as it was at common law," says : " In fact, the latter
conclusion—that is, that the mortgage is considered as merely
ancillary to the debts—will necessarily follow whenever the
mortgage is regarded not as a common-law conveyance, but as
a security for the debt, *the legal estate being considered as sub-
sisting only for that purpose.* In this state this is the generally-
received aspect in which a mortgage is regarded as a mere
security for the debt." And this is no very modern doctrine,
for Lord Hardwicke, in *Casborne* v. *Scarfe, 1 Atk. 603,* said :
" The person therefore entitled to the equity of redemption is
considered as the owner of the land, and a mortgage in fee is
considered as personal assets."

Now, in view of all this, it seems plain that the legal estate
will be regarded as subsisting, in so far as it may be necessary
to secure the debt. I think it must be so regarded in the case
of the mortgage under consideration. If the payments made
after the bond became extinguished related to anything, they
related to the mortgage estate. They were paid by the grantee
of the mortgagor to the mortgagee only because that mortgagee
still had as security for the money once due from Dole a quali-
fied legal title to his land. The payments made were not rent,
but they were, in the most literal sense, the price of possession.
The mortgagee having no personal remedy would, if those pay-
ments were not made, either eject the mortgagor or sell. It
seems to me, therefore, that the language of Chancellor Kent
(*4 Kent Com. *156*) is applicable to the present situation : " What-

ever character we may give to the mortgagor in possession by sufferance of the mortgagee, he is still a tenant. He is a tenant, however, under a peculiar relation. And he has been said to be a tenant from year to year, or at will, or at sufferance, according to the shifting circumstances of the case, and perhaps the denomination of mortgagor conveys distinctly and precisely the qualifications which belong to his anomalous character and is the most appropriate term that can be used."

The consequences of refusing to apply this doctrine to a case like the present would be this: The mortgagor or his alienee might pay interest up to the very day of the filing of the bill, and yet if (there being no personal liability) the statute of limitations began to run when the principal first became payable, and more than twenty years should have elapsed since it became payable, the security would be gone. So inequitable a result could not be legally possible. In *Blue* v. *Everett*, it was, in principle, disclaimed when the court said that payments on the bond, made within sixteen years before suit commenced, would save the security, notwithstanding the fact that the right of entry might have accrued more than twenty years before. I think that while the mortgagor continues to make payments he must be deemed to hold " by the sufferance or permission of the mortgagee under a tacit agreement which the mortgagee may determine at his pleasure." *Heath* v. *Pugh, 6 Q. B. Div. 359.*

Special reference is made in *Blue* v. *Everett* to the right of entry. I take it to be clear, however, that what the court intended to decide was that the bar of the statute would not attach to the equitable remedy of foreclosure and sale until it would attach to the legal remedy by ejectment. Entry was a species of redress by the *mere* act of the party injured. It was in former times of more practical value than at present. Where, for instance, the true owner had been disseized, he was, by the policy of the ancient law, prevented from conveying. A peaceable entry would terminate the disseizin and enable him to convey. *3 Bl. Com. \*5, \*175.* The sixteenth section of our Limitations act regulates this method of redress. The other kind of redress, viz., that by suit or action in court, is regulated by sec-

tion 17. A landlord or mortgagor might fail to enter on breach of condition and yet the tenant might not hold adversely; he might still hold under or by permission of the landlord or mortgagor. It is only when he begins to hold adversely that the statute begins to run so far as the action of ejectment is concerned. *Foulke* v. *Bond, 12 Vr. 545; Van Blarcom* v. *Kip, 2 Dutch. 361.* The question, therefore, in the present case, as in every other case involving adverse possession, is, when did the statute begin to run? Now, it is just at this point that there is a divergence between the law of this state, as declared in *Blue* v. *Everett,* and the law of England. I cannot better illustrate the nature of it than by quoting from the following cases: In *Hall* v. *Doe, ex dem. Surtees, 5 Barn. & A. 687,* L. mortgaged to S. in fee. Default in the payment of principal and interest was made in 1780 and suit was commenced more than thirty years from the date of the last payment of interest. The statute of limitations was insisted upon. Chief-Justice Abbott said · "Upon this finding I am of opinion that this must be considered as an occupation by the permission of the mortgagee, and if so there was no adverse possession and the statute of limitations does not apply. *The payment of interest would have been conclusive evidence of a continuing tenancy.* That fact is not found by the jury, but that is not the only ground upon which the court can proceed. If there were any circumstances from which the court might have presumed that the premises were not occupied by the permission of the mortgagee, they ought to have found that fact. Here, however, is nothing to justify us in presuming that this occupation was not by the permission of the mortgagee. The judgment, therefore, must be for the plaintiff." In a note to *Patridge* v. *Bere, 5 Barn. & A. 604, 7 Eng. Com. L. 204,* it is said: "In every case in which a tenancy by sufferance exists between the parties, and even where an adverse possession commences, as by the entry of the heir or devisee of the mortgagor without the consent of the mortgagee, the payment of interest is a recognition of the title of the mortgagee and evidence of an agreement that the mortgagor or person

Colton *v.* Depew.

deriving title from him shall hold at will and a strict tenancy at will commences."

The court of appeals, in *Blue* v. *Everett*, necessarily decided that the mortgagor's possession was to be deemed adverse from the very day of the breach of the condition.   They inferred this, I suppose, from the two facts of non-surrender and non-payment.   Chief-Justice Abbott, in the case cited, did not think that that was the fair inference from those facts, and thought, too, that if, after the breach of the condition, interest had been paid, that "would have been conclusive evidence of a continuing tenancy."   This was also denied in *Blue* v. *Everett* on the ground that payment of interest is referable to the bond and not to the mortgage, and it was held to be so referable not only in cases where the interest is paid by the mortgagor but also in cases where, as in *Blue* v. *Everett*, it is paid by the grantee of the mortgagor, who is under no personal liability to pay, and who would not have paid but for the presence of the mortgage. In view, however, of the grounds upon which the decision rests, it seems plain that where, as in the present case, the payments of interest cannot be referred to the bond but must be referred to the mortgage, the fair inference is that the mortgagor holds by permission and not adversely.   I think, therefore, in accordance with the doctrine of all the cases, (1) that where the payments are properly referable to the mortgage they are an acknowledgment that the mortgagor, or his grantee, holds under or by permission of the mortgagee; (2) that the possession only becomes adverse when such payments cease; (3) that as the right to bring ejectment would continue for twenty years from the time of the last payment, so the right to foreclose continues for the same period.

As the last payment, in the present case, was made within twenty years before suit commenced, the complainant is entitled to a decree.